THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HAROLD SCOTT, Appellant.

There was no evidence presented at the suppression hearing to indicate that the defendant was arrested in his home. Rather, the evidence presented only demonstrated that the defendant was arrested in his girlfriend's apartment where he had slept on the night preceding his arrest. His mere status there as an overnight guest, without more, was insufficient to establish a reasonable expectation of privacy (see, People v De Moss, 106 AD2d 395; People v Simon, 107 AD2d 196; People v Ponder, 54 NY2d 160). We agree with the hearing court's finding that the surviving victims' photographic identifications of the defendant made several hours prior to the lineup did not render their identifications of the defendant at the lineup inadmissible. The initial photographic identifications were confirmatory and supplied the police with the requisite probable cause to arrest the defendant (see, People v Morales, 37 NY2d 262, 271; People v Higgs, 111 AD2d 410). While the

second photographic identifications were unnecessary, the totality of the circumstances indicate that the lineup identifications nevertheless retained sufficient attributes of reliability so as to warrant the admission of testimony concerning them into evidence (see, Manson v Brathwaite, 432 US 98, 106; People v Jones, 85 AD2d 50; People v Rodriguez, 64 NY2d 738). On the night of the crime, these victims saw the defendant once before he approached them, and although both of them were not able to view the defendant throughout the entire course of the crime, the criminal transaction lasted for approximately one-half hour during which both victims had ample opportunity to observe the defendant at close range, as was evidenced by their thorough and accurate descriptions of the perpetrator. Both victims immediately identified a picture which they found in a wallet at the crime scene as one of the defendant, and the lineup identifications were made within approximately 12 hours of the crime, while their memories were still fresh. There was no evidence that the victims were simply basing their identifications on the photograph rather than on their observations of the man who had attacked them the night before. Further, we note that, contrary to the defendant's assertions, he had no right to have counsel present at the lineup which occurred prior to the commencement of adversarial criminal proceedings (People v Hawkins, 55 NY2d 474, cert denied 459 US 846).

The defendant's wallet, which was found by the victims at the scene of the crime immediately after the perpetrator fled, was properly admitted into evidence despite the People's failure to establish an unbroken chain of custody. The wallet, which is not subject to material alterations which would not be readily identifiable, was identified by both of the victims as the one which they found at the crime scene, and there were reasonable assurances that its condition had not changed (see, People v Julian, 41 NY2d 340; People v Connelly, 35 NY2d 171, 174). A different result is, however, mandated with respect to some of the contents of the wallet. Specifically, the policy slips dated "May 9th" could not be positively identified by any of the witnesses as having been in the wallet when it was found. The failure to establish an unbroken chain of custody with respect to the wallet thus rendered these policy slips inadmissible (see, People v Julian, supra). Nevertheless, in light of the overwhelming proof of guilt, we find this error harmless.

Under the circumstances, the imposition of consecutive sentences for the rape and sodomy counts was improper.

We have examined the defendant's remaining contentions, including those raised in his *pro se* supplemental brief, and have found them to be either unpreserved or lacking in merit.

Mollen, P. J., Mangano, Niehoff and Weinstein, JJ., concur.